J-S46010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                  :            PENNSYLVANIA
                                  :
         v.                           :
                                  :
                                  :
JAMES CRUMPLER                  :
                                  :
          Appellant             :     No. 2836 EDA 2019

Appeal from the Judgment of Sentence Entered August 22, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004210-2018

BEFORE: BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:           **FILED DECEMBER 23, 2020**

Appellant, James Crumpler, appeals from the judgment of sentence of an aggregate term of 5 to 10 years' imprisonment, imposed after he pled guilty to one charge of aggravated assault.[1]  Appellant solely challenges the discretionary aspects of his sentence.  We affirm.

The trial court summarized the facts that led to Appellant's conviction as follows:

> On April 12, 2018, around 12:00 [a.m.], [Appellant] was outside of a bar located at 1322 West Olney Avenue, owned by Complainant, Anthony Jacquinto.  [Appellant] attempted to punch … Complainant outside of the bar, but Complainant avoided the punch.  [Appellant] then followed Complainant inside of the bar, despite attempts to keep [Appellant] from entering.  When Complainant's back was turned, [Appellant] punched Complainant in the jaw, causing Complainant to fall and hit his head on a metal part [of the bar].  Complainant was rendered unconscious after [Appellant's] punch to the jaw.  Complainant was taken to the

---

[1] 18 Pa.C.S. § 2702(a)(1).

hospital where he received three staples for the lacerations to his head, underwent surgery to repair the mandibular fracture to his jaw, and his jaw had to be wired shut.

Trial Court Opinion ("TCO"), 12/11/19, at 1 (citation to record omitted).

Appellant pled guilty to aggravated assault on March 29, 2019. On August 22, 2019, the trial court sentenced Appellant to 5 to 10 years' imprisonment, followed by 5 years' probation. Appellant filed a timely post-sentence motion to reconsider, which was denied. He then filed a timely notice of appeal on October 2, 2019, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[2] Appellant presents the following sole issue for our review:

> Did not the lower court abuse its discretion by imposing a manifestly excessive and unreasonable sentence of 5[ to ]10 years followed by 5 years of reporting probation upon … drug[-]addicted [A]ppellant[,] where the court failed to conduct an individualized sentencing, did not properly consider the sentencing factors under 42 Pa.C.S. § 9721, failed to consider all of [A]ppellant's mitigation, imposed upon … [A]ppellant a higher sentence than what the District Attorney had requested[,] and ignored whether the sentence was the least stringent to protect the community or rehabilitate [A]ppellant?

Appellant's Brief at 3.

Appellant challenges the discretionary aspects of his sentence. Thus, we consider his issue mindful of the following:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse

---

[2] Appellant also filed a Supplemental Rule 1925(b) concise statement after the notes of testimony from the August 22, 2019 plea hearing were made available.

of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

\*\*\*

When imposing [a] sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760-61 (Pa. Super. 2014)

(internal citations and quotation marks omitted).

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

(1) Whether [the] appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa. Super. 2014)

(some citations omitted).

Instantly, the record clearly reflects that Appellant has met the first three requirements: he filed a timely notice of appeal, properly preserved his claim in his post-sentence motion, and included a separate, concise Rule 2119(f) statement in his appellate brief in compliance with the Pennsylvania

- 3 -

Rules of Appellate Procedure. Thus, we now consider whether Appellant has raised a substantial question for our review.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010). Moreover, "this Court does not accept bald assertions of sentencing errors. An appellant must articulate the reasons the sentencing court's actions violated the [S]entencing [C]ode." ***Id.*** (internal citations omitted).

In his Rule 2119(f) statement, Appellant maintains that the trial court "violated the express provisions of the Sentencing Code, imposed an excessive sentence, failed to order a [m]ental [h]ealth evaluation, failed to consider [Appellant's] rehabilitative needs such as his serious addiction issues, failed to impose an individualized sentence without particularized reasons, and failed to properly weigh mitigating evidence at sentencing." Appellant's Brief at 7. Based on the argument presented in his Rule 2119(f) statement and the case law on which he relies, we conclude that Appellant has presented a substantial question. ***See Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (recognizing that an excessive claim in conjunction with an assertion that the court failed to consider mitigating factors raises a substantial

- 4 -

question); ***Commonwealth v. Riggs***, 63 A.3d 780, 786 (Pa. Super. 2012) (concluding that a claim regarding a trial court's failure to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense, and the rehabilitative needs of the appellant raises a substantial question).

Accordingly, we will address the merits of Appellants claim, keeping in mind that,

> [t]he sentencing court is given broad discretion in determining whether a sentence is manifestly excessive because the sentencing judge is in the "best position to measure facts such as the nature of the crime, the defendant's character and the defendant's display of remorse, defiance, or indifference." ***Commonwealth v. Andrews***, 720 A.2d 764, 768 (Pa. Super. 1998) (quoting ***Commonwealth v. Ellis***, 700 A.2d 948, 958 (Pa. Super. 1997)). In order to find that a trial court imposed an "unreasonable" sentence, we must determine that the sentencing court imposed the sentence irrationally and that the court was "not guided by sound judgment." ***Commonwealth v. Walls***, … 926 A.2d 957, 961 ([Pa.] 2007).

***Riggs***, 63 A.3d at 786.

Appellant argues that his sentence is manifestly excessive and that the trial court abused its discretion by failing to account for the needs of the community and his addiction issues. Appellant's Brief at 13. More specifically, Appellant claims that his sentence far surpasses that needed to protect the public, and that it fails to address his rehabilitative needs. ***Id.*** at 9. He explains that he suffered physical and emotional trauma growing up, as a result of watching both parents become addicted to drugs, that he suffered physical and mental abuse at the hands of his father, witnessed domestic

violence towards his mother by his father, experienced neighborhood violence, and suffered from abject poverty and untreated mental health illnesses. *Id.* Appellant asserts that he "easily fell prey to drug addiction as a means of coping with this emotional trauma and mental illness." *Id.* His forensic intensive recovery ("FIR") evaluation indicates that he was diagnosed with post-traumatic stress disorder, bipolar disorder, hallucinogens abuse, alcohol dependence, major depressant disorder, and opiate dependence. *Id.* Appellant states that the sentencing court's failure to order a mental health evaluation, despite evidence of his mental health needs, "demonstrates that [it] did not properly account for his rehabilitative needs or properly structure an individualized sentence." *Id.*

Appellant further avers that the trial court unreasonably focused on the harm caused not only by his actions in this case, but also in a prior case. *Id.* at 13.[3]  Additionally, he argues that the trial court failed to consider the relevant factors as set forth in Section 9721(b) of the Sentencing Code,[4] and

_____

[3] In 2009, Appellant was sentenced to 11½ to 23 months' incarceration, after he pled guilty to aggravated assault.  The 2009 incident similarly involved a dispute at a bar, during which Appellant's actions left the victim with a fractured skull and in a coma for multiple months.  N.T. Sentencing, 8/22/19, at 29-30.

[4] The Sentencing Code provides, in part:

> **(b) General standards.**—In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with … the protection of the public, the gravity of the

that it focused instead almost exclusively on the gravity of the offense and protection of the public. *Id.* at 16. Moreover, Appellant avers that the trial court failed to weigh his rehabilitative needs or the needs of the public at large, but rather focused on what he said about himself during allocution. *Id.* at 18.[5]

Having carefully reviewed the record of Appellant's sentencing proceeding, we ascertain no abuse of discretion by the trial court. As explained in its opinion,

---

offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant….

42 Pa.C.S. § 9721(b).

[5] Appellant quotes the following statement by the sentencing judge:

[Appellant], I think the thing that came through to me the most about what you just said[] is that … you apologize to yourself first. And I think that is who you are, thinking about yourself.

Everything that you just said related to how you were basically impacted by this. How you are impacted by it. What you did to help the Jacquinto[s'] mother. How you were such an asset to her and what you did to help her. You mentioned that you were ["]not a bad person.["] You talked about all that you did for them and for the bar. You were concerned about your daughters calling someone else dad.

What I heard, and what you just said, is all about you. You have given not a single thought to how you [upended] somebody else's life….

*Id.* (quoting N.T. Sentencing at 55-56).

[i]n order to determine the standard guideline sentence, the sentencing court calculates the Offense Gravity Score and the [d]efendant's Prior Record Score.  The sentencing court then considers any aggravating or mitigating factors.  204 Pa. Code §§ 303.2(a)(1)(2), (a)(1)(3)….

Where the sentence falls outside the Sentencing Guidelines, the sentence should be affirmed on appeal unless it is "unreasonable." 42 Pa.C.S.[] § 978(c)(3); *see Commonwealth v. P.L.S.*, 894 A.2d 120, 130 (Pa. Super. [] 2006).  "The sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offenses as it relates to the impact on the life of the victim and the community." *Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa. Super. [] 2002).  The factual basis for the departure must be stated on the record.  *Id.*

TCO at 2-3.

Instantly,

the trial court imposed a sentence of 5 to 10 years[' imprisonment] for the F1 aggravated assault charge.  The Commonwealth and [Appellant] agreed that the Offense Gravity Score was an 11 for the F1 aggravated assault charge[,] and that [Appellant's] Prior Record Score was a 5[.  T]herefore[,] the guidelines recommend 72 to 90 months of incarceration, plus or minus 12 months.

*Id.* at 4.

Initially, we note that Appellant's sentence is within the mitigated range

of the Sentencing Guidelines.[6]  We further stress that the trial court had the

_____

[6] The Sentencing Guidelines recommend ranges of minimum sentences based on the type of offense, the defendant's prior criminal history, and a variety of aggravating and mitigating factors.  *See Commonwealth v. Yuhasz*, 923 A.2d 1111, 1118 (Pa. 2007).  Additionally, if the court determines that aggravating or mitigating circumstances are present, the Guidelines further recommend a specified amount of time greater than the upper limit of the standard range or less than the lower limit of the standard range that may be

benefit of a pre-sentence investigation ("PSI") report, as well as an FIR evaluation, and that it reviewed both prior to sentencing. ***See*** N.T. Sentencing at 3. When a court considers the PSI report for sentencing purposes, it is presumed to have properly considered all relevant aggravating and mitigating factors. ***Commonwealth v. Zeigler***, 112 A.3d 656, 662 (Pa. Super. 2015). Moreover, the trial court indicated that it took into account a report submitted by the Defender Association, as well as letters provided by the Commonwealth. ***See*** N.T. Sentencing at 63 (referencing letters written by Damin Knox, the victim in the 2009 incident, which detailed his attack and rehabilitation). The court also listened to defense counsel discuss many of the mitigating factors Appellant cites, *supra*. ***See id.*** at 13-17 (counsel's emphasizing Appellant's history of drug addiction and mental health issues resulting from a troubled and abusive childhood, family mental health issues, and family drug problems).

The sentencing judge further indicated at the sentencing hearing that he was considering,

> the letter that the defense provided to me this morning from Mr. Rahim Tompson, who was the individual who worked with [Appellant] with the Chosen [L]eague. I've also considered the gravity of the offense as it relates to the community and the impact specifically o[n] the life of the victim in this case, Mr. Jacquinto, as well as the impact o[n] the life of Ms. Jacquinto, who is the sister of Mr. Jacquinto, who assisted in his care in the

---

imposed. ***See id.*** Here, Appellant's minimum sentence of 5 years is equivalent to the Standard Guideline's recommended mitigated sentence of 72 months minus 12 months.

months after his assault and during his recovery, and during his continued recovery.

I've considered the rehabilitative needs of [Appellant], specifically the needs as it relates to mental health treatment and drug and alcohol treatment. I've considered [Appellant's] allocution. I've considered the support that he enjoys from his community. His former paramour, Ms. Lee, is here today and spoke on his behalf. [She s]poke of who [Appellant] is and how he has assisted her in caring for her children and helping to promote her education by caring for her children and how he has assisted in the raising of his children with her. Finally, I've considered the history and characteristics of [Appellant].

*Id.* at 62-64. Accordingly, the court sentenced Appellant to 5 to 10 years' incarceration on the charge of aggravated assault, graded as an F1. *Id.* at 64.[7] As explained in its opinion, "[Appellant's] current conviction, coupled with his past convictions, showed his disregard for the law and the safety of other people and gave the trial court concern that he could be a future danger to the community." TCO at 5. In light of the above considerations, we agree with the trial court that the sentence imposed was warranted. *See id.* "The sentence is neither inconsistent with a specific provision of the [S]entencing [C]ode, nor is it contrary to the fundamental norms that underlie the sentencing process." *Id.* (citing *Commonwealth v. Disalvo*, 70 A.3d 900, 903 (Pa. Super. 2013); N.T. Sentencing at 62-64 (placing the relevant sentencing factors on the record)).

_____

[7] The court further found Appellant in direct violation of his probation in CP-2119-2015 and CP-2764-2015. As a result, it sentenced Appellant to two separate, concurrent terms of 5 years' probation to run consecutive to the period of incarceration. *Id.*

Moreover, contrary to Appellant's assertions that the trial court failed to account for his rehabilitative needs, the sentencing judge further directed:

> I'm going to order that [Appellant] engage in drug and alcohol treatment while he is in state custody and that he be evaluated for treatment for the mental health diagnosis that has been given in the FIR evaluation. That mental health diagnosis includes post-traumatic stress disorder, bipolar disorder, as well as major depressive disorder.
>
> I would also order that [Appellant] engage in treatment for alcohol dependence, as it has been diagnosed in the FIR, as well as opioid dependence.
>
> [Appellant] is also ordered to engage in anger management treatment. I know that he received anger management while in county custody. I believe that he needs continued anger management during the time that he's in state custody, as well as any other treatments that would address some of the issues that he has in coping with other individuals when he doesn't like being told that he can't go to a certain place or that he can't do a certain thing.
>
> He needs to learn how to cope and strategize and deal with people in a way that's not going to be forceful or bullying, just because he wants to do something. That's not the way life works…. That only has gotten you just where you are, sitting in the defendant seat.

N.T. Sentencing at 65-66.

Finally, Appellant argues that the sentence imposed was disproportionate to his conduct. *Id.* at 19. He contends that his offense "should not be equated with every other aggravated assault, as he did not intend to cause serious bodily injury." *Id.* Appellant explains that he only "threw one punch[,]" and that Complainant's injuries were the result of his falling on a metal part of the bar. *Id.* In support of his argument, Appellant cites *Commonwealth v. Alexander*, 383 A.2d 887 (Pa. 1978), in which the

defendant struck the complainant once in the face, causing the victim to fall to the ground. The victim never lost consciousness, but was treated for a broken nose. *Id.* at 888. Appellant emphasizes the Court's statement that it could not conclude "that the mere fact that a punch was delivered to [the head] is sufficient, without more, to support a finding that [the] appellant intended to inflict serious bodily injury." *Id.* at 889.

*Alexander* is distinguishable from the instant matter, however, because the *Alexander* Court concluded that the victim did not actually sustain the requisite serious bodily injury to constitute aggravated assault. *See id.* at 888-89 (citing 18 Pa.C.S. §§ 2702(a), 2301). Moreover, the Court explained that where the injury actually inflicted did *not* constitute serious bodily injury, it looks to whether the blow delivered was accompanied by the intent to inflict serious bodily injury, in determining whether the evidence supports a finding of aggravated assault. *Id.* at 889. Here, Complainant's injuries clearly constituted a "serious bodily injury" where he suffered a fractured jaw, requiring multiple surgeries and the wiring of his jaw shut, leaving him only able to eat through a straw. *See Commonwealth v. Nichols*, 692 A.2d 181, 184 (Pa. Super. 1997) (stating that a broken jaw and being confined to a liquid diet constitutes a serious bodily injury). *See also Commonwealth v. Burton*, 2 A.3d 598, 602 (Pa. Super. 2010) (stating that when a victim actually sustains serious bodily injury, the Commonwealth does not have to

establish specific intent to cause such harm).[8]  Accordingly, we deem Appellant's argument regarding his lack of intent to cause serious bodily injury to be meritless.

Based on the record, we are satisfied that the sentencing court adequately considered all of the mitigating circumstances, as well as the relevant Section 9721(b) factors, including Appellant's rehabilitative needs. We ascertain no abuse of discretion in the ultimate sentence imposed by the court.

Judgment of sentence affirmed.

---

[8] Moreover, we note that Appellant relies on **Interest of N.A.D.**, 205 A.3d 1237 (Pa. Super. 2019), in an attempt to further support his argument that he did not intend to cause serious bodily injury and, therefore, his offense should not be equated to every other aggravated assault.  **See** Appellant's Brief at 19-21.  Contrary to Appellant's assertions, however, we deem the decision in **Interest of N.A.D.** to only bolster the sentence imposed on Appellant in the instant matter.  **See Interest of N.A.D.**, 205 A.3d at 1240 (where this Court affirmed the judgment of sentence imposed for aggravated assault and upheld the trial court's finding that the appellant's behavior preceding the attack and the extreme force of "just one blow" from behind which broke the victim's jaw "sufficed to raise an inference that [the appellant] acted recklessly under circumstances manifesting extreme indifference to the value of human life").  **See also id.** (stating that "evidence that the defendant punched the victim one time is sufficient to support an aggravated assault conviction or a *prima facie* case of aggravated assault where the victim sustains serious bodily injury") (citing **Burton**, 2 A.3d at 602-03)).

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 12/23/2020*